IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JEREMY MILLER,

            Plaintiff,

v.                                                                              CIVIL ACTION NO. 2:19-cv-00901

NICHOLAS HALL, et al.,

            Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendants Fayette County Commission ("FCC"), Mike Fridley ("Fridley"), Nicholas Hall ("Hall"), William R. Callison[1] ("Callison"), and Tillman N. Mooney's[2] ("Mooney") Motion to Dismiss, (ECF No. 6), and Defendants J. Grant Hoover ("Hoover") and Town of Oak Hill's ("Oak Hill") Motion to Dismiss.[3] (ECF No. 16.) For the reasons more fully explained herein, the Defendants' motions are **GRANTED**.

I.    BACKGROUND

This action arises out of the mistaken arrest pursuant to a warrant of Plaintiff Jeremy Miller ("Plaintiff") by law enforcement on December 17, 2017. Plaintiff initiated this action against Hall, Callison, Mooney, Fridley, and Hoover, all individually; the FCC, a political subdivision; Oak Hill, a political subdivision; and John Does 1 and 2, individually. (ECF No. 3.)

---

[1] William R. Callison is misidentified as "Nick Callison" in the Complaint. *See* ECF Nos. 7 at 1, 15 at 1.

[2] Tillman N. Mooney is misidentified as "Nick Mooney" in the Complaint. *See* ECF Nos. 7 at 1, 15 at 1.

[3] Despite the separately-filed motions, the Court shall refer to the Defendants collectively as "Defendants," unless otherwise noted.

The following factual allegations are taken from Plaintiff's Amended Complaint. (ECF No. 3.) Plaintiff is a former resident of Fayette County, West Virginia, but now resides in Columbus, Ohio. (*Id.* at ¶ 3.) On December 17, 2017, Plaintiff was at work when he was contacted by family members who informed him that "tactically outfitted police officers" had shown up to his home to arrest him. (*Id.* at ¶ 11.) None of the officers would inform his family members why Plaintiff was sought for arrest. (*Id.*) Plaintiff did not know why law enforcement would be seeking his arrest, but "figured he needed to deal with the matter right away." (*Id.* at ¶ 12.) Plaintiff had his significant other drive him to the sheriff's office to present himself. (*Id.*) At the sheriff's office, Plaintiff presented his identification. (*Id.* a ¶ 13.) The deputies arrested him, placed him in a holding cell, and then processed him. (*Id.*) The deputies arrested him for charges related to selling heroin. (*Id.* at ¶ 14.) Plaintiff, however, disclaimed any and all knowledge or involvement with selling heroin, and he informed the officers that they arrested the wrong person. (*Id.*) Plaintiff attempted to speak with Sheriff Mike Fridley about the apparent mistake, but Sheriff Fridley allegedly told Plaintiff to "get [his] ass back to [his] cell." (*Id.* at 15.)

After having been processed, Plaintiff recognized an officer who happened to be a lieutenant in the sheriff's department. (*Id.* at ¶ 16.) Plaintiff explained the apparent case of mistaken identity to the lieutenant, who then investigated the matter. (*Id.*) The lieutenant discovered that Plaintiff had indeed been mistakenly arrested. (*Id.*) While a valid warrant did exist for a "Jeremy Miller," this Plaintiff's middle name and initial, date of birth, social security number, and physical appearance were all different. (*Id.* at 16.) Plaintiff was placed back in the holding cell "for another couple hours," whereupon he was released. (*Id.*) Plaintiff alleges he was not given an explanation or apology. (*Id.*)

Plaintiff initiated this action in this Court on December 18, 2019. (ECF No. 1.) On December 30, 2019, and before any answer was filed, Plaintiff filed an Amended Complaint. (ECF No. 3.) Plaintiff's Amended Complaint sets forth two causes of action. First, Plaintiff claims an unreasonable seizure in violation of the Fourth Amendment and asserts this cause of action against the individual defendants. Second, Plaintiff sets forth a state-law negligence claim against the two political subdivisions.

Defendants FCC, Fridley, Hall, Callison, and Mooney filed their motion to dismiss on January 24, 2020. (ECF No. 6.) Plaintiff responded to this motion on February 7. (ECF No. 14.) The Defendants named above filed their reply on February 14. (ECF No. 15.) Defendants Hoover and Oak Hill filed their motion to dismiss on February 17, 2020. (ECF No. 16.) Plaintiffs did not file a response. As such, these motions are fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

"In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering the sufficiency of a complaint, pursuant to a motion under Rule 12(b)(6), this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[ ] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

### III.  DISCUSSION

Defendants seek the dismissal of Plaintiff's complaint in its entirety. Defendants FCC, Fridley, Hall, Callison, and Mooney first argue that, as to Plaintiff's claim brought pursuant to 42 U.S.C. § 1983, the individual defendants are entitled to qualified immunity. (ECF No. 7 at 4.)

Then, Defendants FCC, Fridley, Hall, Callison, and Mooney argue that because Plaintiff's state-law negligence claim is only asserted against the employing entities, the FCC is entitled to statutory immunity under the West Virginia Tort Claims and Insurance Reform Act. (*Id.* at 8.) Finally, these Defendants argue that even if this Court finds that statutory immunity does not bar Plaintiff's negligence claim, Plaintiff has not alleged any facts that would support a claim of negligence against the FCC. (*Id.* at 9.)

Defendants Hoover and Oak Hill make similar arguments. First, Hoover and Oak Hill argue that Plaintiff has failed to plead sufficient factual information to support his § 1983 claim against Hoover. (ECF No. 17 at 4.) Next, and in the alternative, Hoover and Oak Hill argue that Hoover is entitled to qualified immunity as to the § 1983 claim. (*Id.* at 6.) Finally, Hoover and Oak Hill argue that, as to Plaintiff's state-law negligence claim, Plaintiff has failed to plead sufficient factual allegations to support the claim against Oak Hill. (*Id.* at 10.)

Based on the similarities in the arguments, this Court will address the motions together. First, the Court will analyze the application of qualified immunity to the individual deputies. Next, the Court will address statutory immunity under the Act as applied to the political subdivisions. Then, and finally, the Court will address the sufficiency of the factual allegations of Plaintiff's complaint.

  *A.* *Qualified Immunity*

Defendants argue that the individual deputies are entitled to qualified immunity because the arrest of Plaintiff was at most a mistake pursuant to a valid arrest warrant. (ECF No. 7 at 4; ECF No. 16 at 6.) They argue that an objectively reasonable officer having a "Jeremy Miller" surrender at the sheriff's department would in good faith believe that it was the same Jeremy

Miller identified in the arrest warrant and thus execute the arrest. (ECF No. 7 at 4; ECF No. 17 at 6.) Plaintiff, however, argues that he has alleged that the deputies' conduct was objectively *un*reasonable and that it would be improper for this Court to weigh the reasonableness of the officers' actions at this stage because "such allegations require[] a determination of facts." (ECF No. 14 at 3–11.) Plaintiff argues that even "viewing the facts in the light most favorable to the plaintiff, the facts are sufficient to create a genuine issue of material fact under the present circumstances."[4] (*Id.* at 7.)

The purpose of qualified immunity is to ensure that government officials performing discretionary actions can perform their duties "free from the specter of endless and debilitating lawsuits." *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). When performing discretionary functions, government officials are "entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Rish v. Johnson*, 131 F.3d 1092, 1095 (4th Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Therefore, qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

A defendant may assert a qualified immunity defense through a Rule 12(b)(6) motion, but is "usually not successful." *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 396

---

[4] On this note, Plaintiff has apparently confused the standard of review between a motion to dismiss and a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. At this stage, the Court does not determine whether there is a genuine issue of material fact. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). Rather, the Court is tasked with analyzing the legal sufficiency of Plaintiff's Amended Complaint. *Trull v. Smolka*, 411 Fed. App'x 651, 654 (4th Cir. 2011).

(4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)). This is because dismissal under a Rule 12(b)(6) motion is only appropriate if the plaintiff "fails to state a claim that is plausible on its face."  *Id.* at 396 (quoting *Iqbal*, 556 U.S. at 678) (emphasis in original).  A plaintiff's burden when a qualified immunity defense is asserted is to show that a § 1983 claim satisfies the following two-part analysis: "(1) the allegations underlying the claim, if true, substantiate a violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known."  *Souk v. City of Mount Hope*, Civ. Action No. 2:14-cv-26442, 2015 WL 5698509 at *5 (S.D. W. Va. Sep. 28, 2015) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013)).

While Supreme Court precedent once required a reviewing court to proceed with this analysis sequentially, courts now retain discretion in determining which prong of the qualified immunity analysis to address first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Here, Plaintiff has alleged a constitutional violation in the form of an unreasonable seizure prohibited by the Fourth Amendment.  (ECF No. 3 at 5.)  Accordingly, this Court shall analyze first whether a constitutional violation occurred.  This requires the Court to scrutinize Plaintiff's Amended Complaint to determine whether any constitutional violation has been plausibly pled.

Plaintiff has failed to plead a plausible constitutional violation.  The Fourth Amendment protects citizens from "unreasonable searches and seizures" of their "persons, houses, papers, and effects."  U.S. Const. Amend. IV.  "The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by government officials."  *Camara v. Mun. Ct. of City and Cnty. of San Francisco*, 387 U.S. 523, 528 (1967).  Therefore, the Fourth Amendment imposes a fundamental "standard of reasonableness upon the exercise of discretion

by government officials, including law enforcement agents . . . ." *Delaware v. Prouse*, 440 U.S. 648, 653–54 (1979). "An arrest is a seizure of the person." *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001). "An arrest based on probable cause does not violate the fourth amendment, even if the wrong person is arrested." *Mensh v. Dyer*, 956 F.2d 36, 39 (4th Cir. 1991) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). *See also Hill v. California*, 401 U.S. 797, 802 (1971) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.")

What Plaintiff has alleged, factually, is a case of mistaken arrest. Notably, Plaintiff has not attacked the validity of the warrant for "Jeremy Miller," but rather alleges that the officers who arrested him were "objectively unreasonabl[e]." (ECF No. 14 at 6.) However, the Court cannot accept this conclusory allegation as true. *See Iqbal*, 556 U.S. at 679. Factually, Plaintiff has alleged that officers appeared at his home with an arrest warrant for "Jeremy Miller." (ECF No. 3 at ¶ 11.) Plaintiff then went to the sheriff's department and presented his identification, at which point he was arrested. (*Id.* at ¶ 13.) Plaintiff maintained his innocence, but was treated rudely by Sheriff Fridley. (*Id.* at ¶ 15.) Then, Plaintiff told an officer he knew of the mistaken identity, and the officer verified the mistake. (*Id.* at ¶ 16.) Plaintiff was subsequently freed after a "couple of hours." (*Id.* at ¶ 17.) Based on the factual allegations, no constitutional violation occurred.

Because Plaintiff has failed to plead a constitutional violation, the Court's analysis on the issue of qualified immunity ends here.[5] Therefore, because the individual officers here are entitled to qualified immunity based on the mistaken arrest of Plaintiff pursuant to a valid arrest

---

[5] Because the individual defendants are entitled to qualified immunity, the Court does not consider Defendant Hoover's argument that Plaintiff has failed to plead sufficient factual allegations to maintain his § 1983 claim against Hoover.

warrant, the Defendants' motions to dismiss are **GRANTED** as to Count I. Count I is hereby **DISMISSED** as to all Defendants.

      B. *State-Law Negligence*

Defendant FCC next argues for the dismissal of Plaintiff's state-law negligence claim for two reasons: First, FCC asserts that such claims are barred against it based on the statutory immunity granted through the West Virginia Tort Claims and Insurance Reform Act (the "Act"). (ECF No. 7 at 8.) Next, FCC argues that even if this Court finds that statutory immunity does not bar this claim, Plaintiff has failed to plead sufficient factual allegations to support negligence. (*Id.* at 9.) Defendant Oak Hill, meanwhile, argues for the dismissal of Plaintiff's negligence claim because Plaintiff has failed to allege sufficient facts to support the claim. (ECF No. 17 at 10.) This Court will begin its analysis with the FCC's assertion of statutory immunity, before addressing the sufficiency the allegations of Plaintiff's complaint.

      1. *Statutory Immunity*

The Act, W. Va. Code § 29-12A-1 *et seq.*, provides political subdivisions with statutory immunity in certain instances. Relevant to this action, W. Va. Code § 29-12A-5(a)(3) provides that "[a] political subdivision is immune from liability if a loss or claim results from: . . . [e]xecution or enforcement of the lawful orders of any court[.]" Interpreting this language, the Supreme Court of Appeals of West Virginia held as follows:

> [A] political subdivision is immune from liability if a loss or claim results from the execution or enforcement of the lawful orders of any court regardless of whether such loss or claim is caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment.

Syl. Pt. 5, *Mallamo v. Town of Rivesville*, 477 S.E.2d 525, 526 (W. Va. 1996). An arrest pursuant to a valid warrant falls under the immunity granted in W. Va. Code § 29-12A-5(a)(3). *Mallamo*, 477 S.E.2d at 533.

The FCC is entitled to statutory immunity from Plaintiff's claim. Simply, law enforcement officers were executing a lawful order of the court, the arrest warrant. Plaintiff was arrested because he was mistakenly identified as the "Jeremy Miller" to whom the warrant applied. Therefore, and based on the plain language of W. Va. Code § 29-12A-5(a)(3), the FCC is entitled to immunity from this claim.

Plaintiff, however, maintains that this is a "fact driven" analysis, and that because "the town is ignoring the existence of material facts in dispute," the Court would be inappropriately determining issues of fact at this stage. (ECF No. 14 at 11–14.) Moreover, Plaintiff argues that W. Va Code § 29-12A-4(c)(2) explicitly states that negligence claims against political subdivisions are excepted from this grant of immunity where the political subdivision's employees committed the negligent act within the scope of their employment. (*See id.* at 12.)

Plaintiff has apparently misconstrued the standards governing motions to dismiss under Rule 12(b)(6) and motions for summary judgment under Rule 56. The legal sufficiency of Plaintiff's complaint is what is at issue here, not the existence of disputed material facts. Simply, the Court is analyzing the complaint to determine whether Plaintiff has stated a plausible claim upon which relief can be granted. Moreover, Plaintiff has neglected the initial line of § 29-12A-4(c): "*Subject to sections five and six of this article*, . . ." (emphasis added). The *Mallamo* Court addressed this very language:

> The plain meaning of W. Va. Code, 29–12A–4(c)(2) [1986] expressly provides that the liability of a political subdivision for injury to persons allegedly caused by the

10

> negligent performance of acts by their employees is "'*[s]ubject to sections five* and six [§§ 29–12A–5, entitled "Immunities from Liability," and 29–12A–6, entitled "Limitation of actions; specification of amount of damages not allowed"] of this article.'"
>
> \*\*\*
>
> Thus, pursuant to W. Va. Code, 29–12A–4(c)(2) [1986] and W. Va. Code, 29–12A–5(a)(3) [1986], a political subdivision is immune from liability if a loss or claim results from the execution or enforcement of the lawful orders of any court regardless of whether such loss or claim is caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment.

*Mallamo*, 477 S.E.2d at 533 (emphasis and alterations in original). Simply, Plaintiff's complaint has failed to state a claim against the FCC upon which this Court can grant relief because the FCC is granted statutory immunity by the Act.

Therefore, because Defendant FCC is granted statutory immunity for the claim asserted against it, FCC's motion to dismiss is **GRANTED** as to Count II. Count II is hereby **DISMISSED** as to FCC.

    2. *Allegations in Plaintiff's Complaint*

Defendant Oak Hill did not raise statutory immunity, but instead argues that Plaintiff has failed to plead sufficient factual allegations such to support a negligence claim against Oak Hill. (ECF No. 17 at 10.) Defendant Oak Hill argues that Plaintiff's allegations regarding negligent training and supervision are "wholly conclusory." (*Id.*)

The Court agrees. Regarding the negligent training and supervision referenced in the Plaintiff's complaint, Plaintiff only alleges that the officers "were acting in accordance with their training and supervision," and that the training and supervision "was effectively negligent in that it disregarded the use of safeguards against arresting innocent people[.]" (ECF No. 3 at ¶ 28.) As

11

this Court has previously explained, a claim of negligent training and supervision is "center[ed] on whether the employer was on notice of the employee's propensity (creating a duty), yet unreasonably failed to take action (manifesting a breach), resulting in harm to a third-party from the employee's tortious conduct." *Lane v. Fayette Cty. Comm'n*, Civ. Action No. 2:18-CV-01223, 2019 WL 4780815 at *5 (S.D. W. Va. Sep. 30, 2019) (citing *S.R. v. Fayette Cty. Bd. of Educ.*, Civ. Action No. 15-13466, 2016 WL 6886868 (S.D. W. Va. Nov. 21, 2016)). *See also Woods v. Town of Danville, W.V.*, 712 F.Supp.2d 502, 515 (S.D. W. Va. 2010) ("Under West Virginia law, negligent supervision claims must rest upon a showing that [Defendant] failed to properly supervise Jarrett and, as a result, Jarrett proximately caused injury to the plaintiffs.")

Plaintiff has failed to allege specific facts that would satisfy the notice pleading requirements in Rule 8 of the Federal Rules of Civil Procedure and the Supreme Court decisions in *Twombly* and *Iqbal*. Plaintiff has neither alleged what training was deficient nor how such training was deficient. Plaintiff has also failed to allege whether any of these officers had a history of tortious conduct that would put Oak Hill on notice of their propensity, how Oak Hill failed to take action in response to such conduct, or even the type of training the officers received. *See, e.g.*, *Lane*, 2019 WL 6886868 at *6. Without supporting factual allegations, Plaintiff's claim is merely a bare conclusory allegation.

Therefore, because Plaintiff has failed to plead a claim upon which relief can be granted, Defendants Hoover and Oak Hill's motion to dismiss is **GRANTED** as to Count II. Count II is hereby **DISMISSED** as to Oak Hill.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss, (ECF Nos. 6, 16), are hereby **GRANTED**. All claims against the Defendants are hereby **DISMISSED** with prejudice. The Court **DIRECTS** the Clerk to remove this case from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: August 11, 2020

THOMAS E. JOHNSTON, CHIEF JUDGE